447 P.2d 888

**RELIANCE TRUCK COMPANY,**
a corporation, Appellant,

v.

**Dean PLUMMER and Marvel L. Plummer,**
husband and wife, Appellees.

**No. 2 CA–CIV 567.**

Court of Appeals of Arizona.

Dec. 4, 1968.

Rehearing Denied Jan. 14, 1969.

Review Denied March 4, 1969.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellant.

Krotenberg, Laber & Morrow, by Albert Morrow, Tucson, for appellees.

MOLLOY, Judge.

This appeal questions the legality of rendering judgment in a negligence action against an employer when all of the individual employees joined in the action were excused from liability by the jury's verdict.

The action arises out of a motor vehicle accident occurring when a passenger car attempted to pass a "wide load" convoy of trucks and trailers on a 26-foot wide, two-way paved road. The plaintiff, Mrs. Dean Plummer, driving the passenger car with four passengers, came upon a convoy of four truck-trailer combinations owned and operated by the defendant, Reliance Truck Company, proceeding in the same direction. This convoy was escorted by a motorcycle in front and a pickup truck to the rear, provided by the defendant, Arizona Motorcycle Escort Service, Inc.

When the plaintiff arrived at the rear of this convoy, the driver of the pickup, in police uniform, signaled for her to pass. At this time, the convoy was traveling at 40 miles per hour. Each of the truck-trailer combinations was 66 feet in length and each of the trailers was 8-feet wide at its front end and 15-feet three inches at its rear end. The rear side of each of the over-width trailers[1] was projecting over the center line of the highway between one and one-half to two feet as it traveled along.

After the plaintiff started around the convoy in the left lane, ordinarily used by oncoming traffic, she saw an approaching car, driven by the defendant, Brown, ahead.

1. A.R.S. § 28–1002 provides a maximum width for all vehicles of eight feet.

She testified that the truck-trailer combinations were too close together to permit her to drive in between them. In moving over to the right, the plaintiff's car came in contact with one of the trucks and thereafter collided with the oncoming Brown vehicle. The plaintiff and four passengers were injured in the accident.

The plaintiffs joined as defendants in the action the four Reliance truck drivers and also the motorcycle and pickup drivers employed by the defendant, Arizona Motorcycle Escort. The forms of verdict submitted to the jury permitted it to find liability against any one or more of the defendants and the verdict rendered by it exonerated all defendants from liability except the defendants Reliance and Brown. Brown did not appeal from this adverse judgment, nor did the plaintiffs appeal from the judgments in favor of the various employees of Reliance. Reliance contends that, as a matter of law, the judgments rendered against it must be set aside because its employees prevailed in the action.

Reliance cites DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342 (1945), which holds that, where the liability of a master is predicated solely upon the negligence of particular servants who are joined as parties defendant, a verdict which exonerates the servants also requires exoneration of the master. However, *DeGraff*, quoting from other authority, clearly delineates an exception to this rule which is applicable to this case:

" 'But a verdict in favor of one servant does not bar a recovery against the master, *where the evidence shows that the negligence of another servant who is not joined as a party, or who if joined as a party is not exonerated by the verdict, has caused the injury.'* " (Emphasis added) 62 Ariz. 266, 157 P.2d 344.

We find ample evidence in this record to support the judgment against Reliance, aside from any evidence of negligence on the part of the individual drivers of these vehicles. That the independent negligence of Reliance, in addition to the negligence of its drivers, was in issue is clearly indicated by the pretrial order:

"ISSUES TO BE TRIED:

\*     \*     \*     \*     \*     \*

"A. Did they fail to keep a proper distance between vehicles traveling in the motorcade?

"B. Did they fail to keep · adequate room for passing in normal traffic?

"C. *Should it have been conducting such motorcade on that particular road?*

"D. *Did Reliance have proper permits to be on the road at that time and place and in that manner?*

"E. *Did Reliance fail to provide reasonable escort to assist and control the traffic?*

"F. *Did Reliance use vehicles that were too wide?*

"G. Did Reliance's drivers fail to properly control their vehicles under the circumstances?

"H. Were Reliance's drivers negligent in failing to take proper action once they sensed the situation of the other vehicles?"   (Emphasis added)

These truck-trailer combinations had been used by Reliance for some period of time in transporting airplane parts along this same road and at one time Reliance had used an escort of two motorcycles in front with a pickup in the rear of the convoy. There is testimony in the record that the use of two motorcycles in front would make it easier to "funnel" the oncoming traffic over to the side of the road so as to permit safe passage of the convoy by cars, such as the plaintiffs', traveling in the same direction.

The trucks and pickup escort of the convoy had two-way radio, but could not communicate with one another because their radios were of the type that could only communicate with a base station, and there was a "dead spot" for communication to the base station on this particular highway, a fact previously known to Reliance. The evidence would suggest that "three-way" radios were available for installation and

**508**

would have permitted inter-vehicle communication. The front motorcycle escort had no radio at all. There was testimony indicating that inter-vehicle communication might have avoided this accident.

The trailers were unloaded at the time of this accident. They were designed so that they could be folded together in the back to an 8-foot overall width, but this had not been done for this trip, a decision which the evidence would suggest was at an administrative level, in the Reliance organization, higher than the truck driver-defendants.

The legal question presented is a simple one. Was there sufficient evidence of negligence on the part of Reliance, aside from any evidence of negligent conduct on the part of its employees, who were joined in this action, so that the trier of fact would be justified in holding the defendant-employees blameless but in finding negligence on the part of the employer?

Our Supreme Court has defined negligence as "* * * the failure to act as a reasonable and prudent person would act in like circumstances." Alires v. Southern Pacific Company, 93 Ariz. 97, 110, 378 P.2d 913, 921 (1963). This definition is not substantially different from that of the Restatement (Second) of Torts, see §§ 282 and 283.

There are many factors established here which might have led a jury to believe that this accident was caused more by faulty planning than by faulty execution and that in effect this convoy was an accident going some place to happen. The width of these trailers, the selection of this particular route, the type of escort and the method of communication between vehicles were all under the control of employees of Reliance who were not joined in this action.

Accordingly, we believe the jury's verdict to be sustainable. See Atchison, Topeka and Santa Fe Railway Co. v. Parr, 96 Ariz. 13, 391 P.2d 575 (1964); Siebrand v. Gossnell, 234 F.2d 81 (9th Cir. 1956); and Re-

statement of Judgments § 99, Comment b, at 494.

Judgment affirmed.

KRUCKER, J., and ALICE TRUMAN, Superior Court Judge, concur.

NOTE: Chief Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge ALICE TRUMAN was called to sit in his stead and participate in the determination of this decision.